# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| TRINIDAD NAVARRO, Honorable, Insurance Commissioner of the State of Delaware, In his Official Capacity as the Receiver of Carrier Solutions Risk Retention Group, Inc. in Liquidation, as assignee of USA Risk Group (West), Inc., <br>     *Plaintiff*, <br><br> v. <br><br> ALLIED WORLD SURPLUS LINES INSURANCE COMPANY, formerly known as Darwin Select Insurance Company, <br>     *Defendant.* | Case No. 3:20-cv-01305 (KAD) <br><br><br><br><br><br><br> June 21, 2021 |

# MEMORANDUM OF DECISION
# RE: DEFENDANT'S MOTION TO DISMISS (ECF NO. 19)

Kari A. Dooley, United States District Judge:

The Honorable Trinidad Navarro, Insurance Commissioner of the State of Delaware, brings this action in his capacity as the Receiver of Carrier Solutions Risk Retention Group, Inc. (the "Plaintiff," or "CSRRG"), in liquidation, and as assignee of USA Risk Group (West) Inc. ("USA Risk") against Allied World Surplus Lines Insurance Company ("Allied World Surplus" or the "Defendant"), which issued an insurance policy to USA Risk in connection with services performed by USA Risk on behalf of CSRRG. The Plaintiff alleges that Allied World Surplus breached its duty to defend and its duty to indemnify USA Risk in connection with a lawsuit filed by CSRRG against USA Risk in Delaware that the parties subsequently settled. Allied World Surplus now moves to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6), principally on the grounds that it fulfilled its obligations under the insurance policy in accordance with what it

1

contends is the applicable $25,000 limit of liability. For the reasons that follow, the motion to dismiss is DENIED.

**Background and Allegations**

CSRRG was a Delaware Domestic Insurance Risk Retention Group that was established as a captive insurer to provide liability insurance to trucking companies that offered self-funded health plans to their employees. (Compl. ¶¶ 2–3, 9, ECF No. 1.) USA Risk was retained to serve as CSRRG's captive manager, a role which involved assisting CSRRG with the preparation of corporate and insurance regulatory filings and other tasks related to forming and operating a risk retention group under Delaware law. (*Id*. ¶ 12.) In early 2010 CSRRG, facing insolvency, decided to cease operations and take actions to avert potential receivership proceedings; however these actions were unsuccessful and CSRRG was declared insolvent by Liquidation and Injunction Order (the "Liquidation Order") of the Court of Chancery of the State of Delaware (the "Delaware Chancery Court") on August 9, 2010. (*Id*. ¶¶ 13–14.) The Delaware Chancery Court appointed the Delaware Insurance Commissioner (the "Commissioner") to serve as the Receiver in the liquidation and vested the Receiver with authority to, *inter alia*, sue and defend on CSRRG's behalf. (*Id*. ¶¶ 14–15.) On August 20, 2010, CSRRG put USA Risk on notice of a potential claim arising from services provided by USA Risk prior to the liquidation. (*Id*. ¶ 16.)

At the time this notice was given, USA Risk was insured under an Insurance Agents and Brokers Professional Liability policy issued by Darwin Select Insurance Company ("Darwin"), which was effective from May 1, 2010 to May 1, 2011 (the "Policy"). (*Id*. ¶ 17.) Allied World Surplus is the successor to Darwin and the surviving entity following a merger between the parties; the two are collectively referred to herein as Allied World Surplus. (*Id*. ¶¶ 5–6.) The Policy provides a $3,000,000 limit of liability for "each Claim under Insuring Agreement A, Loss only"

and "in the aggregate for all Claims under Insuring Agreement A, Loss only," and a $25,000 limit of liability for "each Claim and in the aggregate for all Governmental Claims under Insuring Agreement B, both Loss and Defense Expenses." (Policy Declarations, Compl. Ex. A, ECF No. 37.[1])  The Policy obligates Allied World Surplus to pay, on USA Risk's behalf, any loss in excess of the $50,000 retention set forth in the Declarations and subject to the $3,000,000 limit of liability "which the Insured shall become legally obligated to pay because of Claims, other than Governmental Claims," provided certain conditions are met. (Insuring Agreements § I.A.)  For Governmental Claims, by contrast, the Defendant is only obligated to pay on USA Risk's behalf Loss and Defense Expenses subject to the $25,000 limit of liability, without a retention. (*Id*. § I.B.)  "Governmental Claim" is defined as "a Claim or investigation brought by any federal, state or municipal agency, insurance department, or other governmental or quasi-governmental authority, in any capacity, whether in its own right, on behalf of an individual or entity, or by an individual or entity on the agency's or authority's behalf." (Policy Definitions § II.E.)

In May 2012 the Commissioner, in his capacity as Receiver, brought suit against USA Risk on behalf of and in the name of CSRRG, alleging that USA Risk caused or contributed to CSRRG's insolvency (the "Underlying Litigation"[2]). (Compl. ¶¶ 28–29.)  USA Risk tendered the complaint in the Underlying Litigation to Allied World Surplus for defense and indemnity under the Policy. (*Id*. ¶ 34.)  While Allied World Surplus initially accepted the defense of USA Risk and provided USA Risk with legal representation as well as costs and expenses in connection with the Underlying Litigation, sometime in or after July 2015, it withdrew its defense of USA Risk against

---

[1] While the Policy sets forth all defined terms in bold type, the Court has omitted all such emphases in its recitation of the Policy's applicable terms of coverage.

[2] The complaint in the Underlying Litigation is captioned *The Honorable Karen Weldin Stewart, CIR-ML, Insurance Commissioner of the State of Delaware, In Her Capacity as the Receiver of Carrier Solutions Risk Retention Group, Inc., in Liquidation v. USA Risk Group (West), Inc., a Delaware Corporation*, and is attached as Exhibit B to the complaint in the instant matter. (ECF No. 38.)  Commissioner Stewart preceded Commissioner Navarro in that role.

CSRRG's claims. (*Id*. ¶¶ 35, 37.) As set forth in its motion, Allied World Surplus submits that it satisfied its obligations by tendering the $25,000 limit of liability applicable to Governmental Claims. The Commissioner, however, asserts that "[t]he Underlying Litigation does not constitute a 'Governmental Claim' under the Policy," as "[t]he Receiver of CSRRG is not acting in his capacity as the insurance commissioner nor are the acts of the Receiver those of the Delaware Department of Insurance." (*Id*. ¶ 54.)

Thereafter, on July 25, 2017, CSRRG and USA Risk entered into a settlement (the "Settlement Agreement"), pursuant to which the parties agreed to settle CSRRG's claims in the Underlying Litigation for an aggregate amount of $1,000,000. (*Id*. ¶¶ 38–39.) On August 14, 2017, the Receiver filed a Verified Petition for Approval of Settlement Agreement (the "Petition"), requesting that the Delaware Chancery Court issue an order approving the Settlement Agreement and a release between CSRRG and USA Risk. (*Id*. ¶¶ 40–41.) The Delaware Chancery Court issued an Order to Show Cause ("OSC") on October 16, 2017, in which it provided a November 3, 2017 deadline for any interested party or claimant to object to the Petition and made clear that failure to do so by the deadline would constitute waiver of any right to judicial review. (*Id*. ¶¶ 42–43.) CSRRG served a copy of the OSC and the Petition on Allied World Surplus and its attorneys on October 19, 2017. (*Id*. ¶ 44.) Allied World Surplus did not respond or otherwise object to the relief sought in the Petition. (*Id*. ¶ 46.)

The Delaware Chancery Court issued an order on November 3, 2017 granting the Petition, approving the Settlement Agreement, and authorizing and ordering the Receiver to implement the Settlement Agreement's terms. (*Id*. ¶ 47; Ex. F, ECF No. 42.) CSRRG served a copy of the Delaware Chancery Court's November 3, 2017 order on the Defendant on November 8, 2017 but the Defendant again neglected to respond. (Compl. ¶ 48.) In accordance with the Settlement

Agreement, USA Risk subsequently filed a consent judgment in the Underlying Litigation and executed an assignment of rights to the Receiver in connection with USA Risk's claims against the Defendant. (*Id.* ¶ 49.)

CSRRG brings the instant suit as assignee of USA Risk against Allied World Surplus to recover damages arising from the Defendant's alleged breach of its duty to defend and duty to indemnify USA Risk in the Underlying Litigation. Allied World Surplus has moved to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 19), which the Plaintiff has opposed. (ECF No. 48.) Because the parties' dispute turns purely on issues of contract interpretation, they have jointly requested a stay of all discovery pending resolution of the motion to dismiss. (*See* Joint Rule 26(f) Report, ECF No. 23.) Specifically, the Defendant asserts that CSRRG's claim against USA Risk constituted a "Governmental Claim" within the meaning of the Policy and was accordingly subject to the $25,000 limit of liability. It therefore represents that its withdrawal of its representation of USA Risk in the Underlying Litigation was proper following exhaustion of the $25,000 liability limit. The Defendant argues in the alternative that the Plaintiff's claims are barred by the statute of limitations. The Plaintiff responds that the Underlying Litigation was not a Governmental Claim and that even if it were to meet that definition, it falls within the Policy's exception as a claim brought by a governmental entity in its sole capacity as a client or customer of USA Risk. As necessary, these issues are addressed below.

**Legal Standard**

On a motion to dismiss under Rule 12(b)(6), the Court "must accept as true the factual allegations in the complaint and draw all inferences in the plaintiff's favor." *Kinsey v. New York Times Co.*, 991 F.3d 171, 174 (2d Cir. 2021) (quotation marks, alterations, and citation omitted). "For motion to dismiss purposes, the complaint is deemed 'to include any written instrument

attached to it as an exhibit or any statements or documents incorporated in it by reference.'" *Id.* (quoting *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000)). The complaint "must 'state a claim to relief that is plausible on its face,'" setting forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Kolbasyuk v. Capital Mgmt. Servs., LP*, 918 F.3d 236, 239 (2d Cir. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). At this stage "the court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020).

**Discussion**

**Whether the Underlying Litigation is a "Governmental Claim" Under the Policy**

"An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract." *Nat'l Grange Mut. Ins. Co. v. Santaniello*, 290 Conn. 81, 88, 961 A.2d 387 (2009). The Court's analysis is therefore guided by well-established principles of contract interpretation.

> A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. The intent of the parties is to be ascertained by a fair and reasonable construction of the written words and the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms.

*Tallmadge Bros. v. Iroquois Gas Transmission Sys., L.P.*, 252 Conn. 479, 498, 746 A.2d 1277 (2000) (quotation marks, alterations, ellipses, and citations omitted). "The contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every

6

provision must be given effect if it is possible to do so." *Murtha v. City of Hartford*, 303 Conn. 1, 9, 35 A.3d 177 (2011) (citation omitted).

> In determining whether the terms of an insurance policy are clear and unambiguous, a court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity. Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. As with contracts generally, a provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading. Under those circumstances, any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy. This rule of construction may not be applied, however, unless the policy terms are indeed ambiguous.

*Santaniello*, 290 Conn. at 89 (quotation marks, alterations, ellipses, and citations omitted).[3]

As noted, the parties' dispute centers on the coverage terms and definitions set forth in the Policy. Specifically, the parties disagree as to whether the claim tendered by USA Risk to Allied World Surplus in connection with the Underlying Litigation brought by CSRRG was a "Governmental Claim" within the meaning of the Policy. "Claim" is defined by the Policy to include "any civil proceeding in a court of law . . . made against any Insured seeking to hold such Insured responsible for damages for a Wrongful Act or Personal Injury." (Policy Definitions § II.B.) There is no question that the Underlying Litigation was a "Claim" under the Policy. "Governmental Claim" is defined as:

> a Claim or investigation brought by any federal, state or municipal agency, insurance department, or other governmental or quasi-governmental authority, in any capacity, whether in its own right, on behalf of an individual or entity, or by an individual or entity on the agency's or authority's behalf.

---

[3] In its opening brief Allied World Surplus cites to Connecticut law and clarifies in its reply that it has assumed for purposes of its motion to dismiss that Connecticut law governs the issues of contract interpretation that underlie the Plaintiff's claims, even though the Policy was issued to USA Risk in Vermont. (*See* Reply at 6 n.2.) Allied World Surplus also notes that Vermont law does not differ from Connecticut law in any material way for purposes of interpreting an insurance policy. *See, e.g.*, *Cincinnati Specialty Underwriters Ins. Co. v. Energy Wise Homes, Inc.*, 199 Vt. 104, 109, 120 A.3d 1160 (2015) ("We interpret policy terms according to their plain, ordinary and popular meaning. . . . Ambiguity exists if a term is subject to more than one reasonable interpretation, and all ambiguities must be resolved in favor of the insured. . . . Policies that specifically and unambiguously exclude coverage are effective to preclude the insurer's liability, and we cannot deny the insurer the benefit of unambiguous provisions inserted into the policy for its benefit.") (quotation marks, alterations, and citations omitted). The Court need not undertake a choice of law analysis as the applicable forum law does not alter the outcome of this decision.

7

(*Id*. § E.)  In addition:

> A Governmental Claim shall not include any Claim brought by a governmental entity solely in its capacity as a customer or client of the Insured, and seeking only remedies available to a similarly situated private claimant.  Such Claims may be covered under Insuring Agreement A of this Policy, if not otherwise excluded under the terms, conditions and exclusions of this Policy.

(*Id*.)

Relying on the plain language of the policy, the Defendant argues that because the Commissioner, who is a governmental authority, brought the claim in his capacity as Receiver on behalf of CSRRG against USA Risk, the claim is indisputably a "Governmental Claim" as that term is defined.  The Defendant further asserts that the exception for "any Claim brought by a governmental entity solely in its capacity as a customer or client of the Insured" does not apply because the Commissioner was never USA Risk's customer nor client as USA Risk performed services for CSRRG and not the Delaware Department of Insurance; and nor is the Commissioner "seeking only remedies available to a similarly situated private claimant" as set forth in that exception.  The Defendant accordingly maintains that it satisfied its obligations under the Policy by tendering the $25,000 limit of liability applicable to Governmental Claims.

The Court disagrees that the Underlying Litigation was indisputably a "Governmental Claim."[4]  As discussed below, the definition of a "Governmental Claim" is silent on the question

---

[4] While neither the Plaintiff nor the Defendant argue that the Policy language is ambiguous, and each simply asserts its respective interpretation of the language, the Court observes that the terms "governmental authority" or "quasi-governmental authority" are not defined anywhere in the Policy.  These terms appear in the definition of "Governmental Claim" following the list of "federal, state or municipal agency, insurance department" and are preceded by "or other," which suggests that the "governmental authority" is of "like kind" to a "federal, state or municipal agency, [or] insurance department." *See, e.g.*, *24 Leggett St. Ltd. P'ship v. Beacon Indus., Inc.*, 239 Conn. 284, 297, 685 A.2d 305 (1996) (explaining that under the doctrine of *ejusdem generis*, "[w]hen people list a number of particulars and add a general reference like 'and so forth' they mean to include by use of the general reference not everything else but only others of like kind."). Accordingly, it is not apparent that an individual government official such as an insurance commissioner, as a receiver or otherwise, is of "like kind" to a "federal, state or municipal agency, [or] insurance department"—all of which are governmental *entities*. And while the definition also provides that the

8

of whether, even if a government official is a "governmental authority," *see* footnote four, *supra*, it includes a government official operating in a private context.

And the Plaintiff's primary argument—that the Underlying Litigation was not a "Governmental Claim" because the Commissioner was not acting in his capacity as a government official but, rather, brought the action as a private receiver on behalf of an insolvent insurer—is persuasive, finds support in the law, and is consistent with the nature of a receivership. Plaintiff cites the Liquidation Order, which vested the Commissioner as Receiver "with all right, title and interest in, of or to the property of" CSRRG and authorized the Receiver "to deal with the Assets, business and affairs of [CSRRG] including, without limitation, the right to sue, defend, and continue to prosecute suits or actions already commenced by or for [CSRRG], or for the benefit of [CSRRG's] members, policyholders, cedants, creditors and stockholders . . . in [his] name as the Insurance Commissioner of the State of Delaware, or in the name of [CSRRG.]" (Liquidation Order ¶¶ 3, 6, Ex. A to Compl. Ex. B, ECF No. 38.[5]) Had the Commissioner brought the Underlying Litigation in CSRRG's name directly, the Plaintiff argues that the Defendant would have no basis for asserting that it was predicated on a Governmental Claim, and thus the Plaintiff declares that it would lead to an absurd result to characterize CSRRG's claims as Governmental Claims merely because the Underlying Litigation was prosecuted in the Commissioner's name while functioning as a private receiver.

---

claim may be made "by an individual or entity on the agency's or authority's behalf," if the "individual" is also the "authority" this phrase is arguably nonsensical, but would make sense if the authority is an entity with respect to which an individual can advance a claim. The Court does not decide the motion to dismiss on the basis of this potential ambiguity as the parties have not advanced this issue.

[5] As the Plaintiff observes the Delaware Insurance Code is in accord. *See* 18 Del. C. § 5911(a) ("An order to liquidate the business of a domestic insurer shall direct the Commissioner forthwith to take possession of the property of the insurer, to liquidate its business, *to deal with the insurer's property and business in the Commissioner's own name as Insurance Commissioner or in the name of the insurer, as the court may direct*, and to give notice to all creditors who may have claims against the insurer to present such claim") (emphasis added).

Consistent with Plaintiff's position, courts have recognized as a general matter that when an insurance commissioner (or equivalent state official) is appointed under state law as the receiver of an insolvent insurer for purposes of rehabilitation or liquidation, the receiver is understood to act on behalf of the insolvent insurer, not on behalf of the state government. For example, in *Dinallo v. DiNapoli*, 9 N.Y.3d 94, 97, 877 N.E.2d 643 (N.Y. 2007), the Court of Appeals of New York explained that the New York "Superintendent of Insurance serves in two distinct capacities: (1) as supervisor and regulator of New York State's insurance industry as a whole . . . and (2) as a court-appointed receiver on behalf of distressed insurers," which, in the latter role, confers "upon the Superintendent broad fiduciary powers to manage the affairs of distressed domestic insurers and to marshal and disburse their assets." In holding that the New York State Comptroller lacked authority to audit the New York State Insurance Department Liquidation Bureau, the Court of Appeals rejected the notion that the assets of a liquidated insurer are held by the Superintendent in his capacity as a state official under New York finance law, observing that "while the Superintendent's role as liquidator is judicial and private, his role as regulator and supervisor is administrative and public. Consequently, the Superintendent as liquidator is not a state officer but rather one who acts on behalf of a private entity." *Id*. at 103. The Liquidation Order here likewise recognizes that the Receiver and other personnel employed to carry out the liquidation of CSRRG were to be paid out of CSRRG's funds and assets and such individuals "shall not be deemed to be employees of the State of Delaware." (Liquidation Order ¶¶ 18–19.)

Similar observations have been made in other contexts regarding the legal significance of the distinction between an insurance commissioner functioning as a regulatory authority and an insurance commissioner operating in a private role, such as a liquidator or rehabilitator. *See, e.g.*, *Koken v. One Beacon Ins. Co.*, 911 A.2d 1021, 1029 (Pa. Commw. Ct. 2006) (recognizing that

prior actions of the Insurance Commissioner in her regulatory capacity cannot be asserted as affirmative defenses in action brought in her capacity as liquidator of insurance company as "the Liquidator steps into the shoes of the insurer and recoups its assets to protect the rights of its creditors, policyholders and shareholders" and "does not premise her claims upon any rights asserted by the Insurance Department or the Insurance Commissioner") (quotation marks and citation omitted); *Kentucky Cent. Life Ins. Co. By & Through Stephens v. Park Broad. of Kentucky, Inc.*, 913 S.W.2d 330, 334 (Ky. Ct. App. 1996) ("Because it is our opinion that the commissioner as 'rehabilitator' occupies a legally separate role from that of his official capacity as regulator of the state's insurance department, we conclude the rehabilitator falls outside the purview of" provision of Kentucky Open Records Act applicable to a "public agency"); *State of N.C. ex rel. Long v. Alexander & Alexander Servs., Inc.*, 711 F. Supp. 257, 262 (E.D.N.C. 1989) ("The Commissioner as rehabilitator thus loses his identity as the State, and with it his immunity as an officer of the State, by assuming the identity of the insurer in actions brought for and against the insurer").

Plaintiff acknowledges that the Delaware courts have not confronted this precise issue but cites the Court to *Stewart v. Wilmington Tr. SP Servs., Inc.*, 112 A.3d 271, 308 (Del. Ch.), *aff'd*, 126 A.3d 1115 (Del. 2015), where the Delaware Chancery Court addressed whether the doctrine of *in pari delicto*, an affirmative defense which bars claims as between wrongdoers save for certain exceptions, should apply to claims brought by the Commissioner in her capacity as receiver of certain captive insurers in liquidation against the insurers' auditor and captive manager. The Delaware Chancery Court first rejected the Commissioner's argument "that because the Receiver is innocent of wrongdoing when she 'steps into the shoes' of the liquidated entities, she cannot be subject to the defenses to which the entities themselves would be subject," noting

11

that "this principle would eviscerate *in pari delicto*." *Id.* at 312. The court also declined the Commissioner's request to recognize a public policy exception to the doctrine in order to further the State's policy goals of making innocent policyholders whole and deterring the misconduct of firms that provide services to captive insurers. *See id.* at 313–14. First, the court observed that "the claims subject to the pending motions to dismiss are the [captive insurers'] claims, not the Insurance Commissioner's," but "even setting that aside, the expansive and intricate statutory and regulatory framework governing Delaware-domiciled insurance companies arguably cuts *against* the Receiver's position that *in pari delicto* should not apply, not in favor of it." *Id.* at 313. In other words, because the Department of Insurance and the Commissioner already have broad "authority to achieve the goals of making innocent insurance policyholders whole, and deterring bad conduct on the part of firms providing professional services to insurers" through the regulatory process, the Delaware Chancery Court found the Commissioner's argument that this policy should also dictate the outcome of a private cause of action unavailing. *Id.* at 314. The Court agrees with CSRRG that the court's opinion "made the clear distinction between claims brought by the Receiver, which were merely the insolvent insurer's private causes of action, and [were] not actions of the Insurance Commissioner, and regulatory action the Commissioner could bring as the regulator." (Pl.'s Mem. at 23.)

The Defendant does not dispute that a receiver stands in the shoes of an insolvent insurer for purposes of litigation involving the insurer, and instead argues that the Plaintiff ignores the plain language of the Policy—which defines Governmental Claim as extending to any claim brought by a state or federal insurance department or other governmental authority "*in any capacity*." The Defendant argues that the Plaintiff's position—that the same outcome should obtain had CSRRG prosecuted the Underlying Litigation directly—is misleading because under

12

Delaware law, the Commissioner is the *only* individual who can be designated a receiver and the Commissioner's initiation of a lawsuit on behalf of the insolvent insurer is therefore an exercise of his governmental role. *See* 18 Del. C. § 5913(a) ("Whenever under this chapter a receiver is to be appointed in delinquency proceedings for an insurer, the court shall appoint the Commissioner as such receiver."). This argument is beside the point. The fact that the Commissioner is the Receiver by operation of statute does not change the fundamentally private nature of the Underlying Litigation. The Commissioner was not acting to advance the State of Delaware's interests and sought only to recoup losses on behalf of CSRRG. Under these circumstances it is not clear that the Commissioner was a "governmental authority" advancing a "Governmental Claim" under the Policy. And it is decidedly not indisputable that he was.

The Defendant also cites the Court to cases arising in the bankruptcy courts and which draw a distinction between a trustee in bankruptcy and the debtor.[6] However the Court is not persuaded that this analogy to bankruptcy law necessitates the unambiguous reading of the Policy that the Defendant advocates, and the cases that the Plaintiff cites are more instructive in understanding how courts interpret the role of an insurance commissioner in particular vis-à-vis litigation brought on behalf of an insolvent insurer.

---

[6] In its reply brief Defendant cites cases wherein courts have recognized such a distinction between a bankruptcy trustee and a debtor for purposes of an "insured vs. insured" exclusion in a directors and officers ("D & O") insurance policy issued to the debtor, despite the fact that the trustee may bring claims in an adversary proceeding that are founded solely on the debtor's rights. *See, e.g.*, *In re Cty. Seat Stores, Inc.*, 280 B.R. 319, 324–26 (Bankr. S.D.N.Y. 2002) (holding that policy exclusion which exempted insurer from liability for claims brought by an insured or the company did not apply to claim brought by pre-petition company's bankruptcy trustee, and concluding that "a bankruptcy trustee charged with a statutory duty and endowed with special statutory powers, is an independent and disinterested entity, separate and distinct from the debtor, as well as the pre-petition company, and as such does not strictly 'stand in the shoes' of the debtor[;] [n]or does he assume the identity of the debtor."); *Alstrin v. St. Paul Mercury Ins. Co.*, 179 F. Supp. 2d 376, 404 (D. Del. 2002) ("agree[ing] with the D & O plaintiffs and the Estate Representative that the 'insured v. insured' exclusion should not apply to claims brought by a bankruptcy Estate Representative against the former directors and officers of the Debtor where the Debtor is the insured entity, because the Debtor's Estate Representative . . . and the Debtor . . . are separate entities").

13

Because the Court agrees with the Plaintiff that the Underlying Litigation does not unambiguously constitute a "Governmental Claim" as defined by the Policy, it does not reach the Plaintiff's alternative argument that the Underlying Litigation meets the exception for a "Claim brought by a governmental entity solely in its capacity as a customer or client of the Insured, and seeking only remedies available to a similarly situated private claimant." Nor does it resolve the Plaintiff's contention that the motion to dismiss should be denied because Defendant is estopped from claiming that it did not breach its duty to indemnify when it breached its duty to defend.

**Statute of Limitations**

Allied World Surplus also argues that even if the Underlying Litigation was not a Governmental Claim, this suit is barred by Connecticut's six-year statute of limitations for breach of contract claims. *See* Conn. Gen. Stat. § 52-576(a) ("No action for an account, or on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues.").[7] "While a statute of limitations defense is most often pleaded as an affirmative defense and may require a factual inquiry beyond the face of the complaint, a defendant may raise the statute of limitations in a Rule 12(b)(6) motion where the dates in a complaint show that an action is barred by a statute of limitations." *Chisholm v. United of Omaha Life Ins. Co.*, 514 F. Supp. 2d 318, 324 (D. Conn. 2007) (quotation marks, alterations, and citation omitted). However, "[w]here . . . a complaint does not demonstrate facial infirmity with respect to the statute of limitations, a motion to dismiss on this ground must fail." *Bartold v. Wells Fargo Bank, N.A.*, No. 14-CV-00865 (VAB), 2015 WL 7458504, at *4 (D. Conn. Nov. 24, 2015) (quotation marks and citation omitted). "In short, a motion to dismiss may be granted if a complaint's allegations

---

[7] "In cases grounded on diversity jurisdiction the court must apply 'the statute of limitations that the court of the forum state would apply.'" *Plimpton v. Bank of Jackson Hole*, No. 3:20-CV-00323 (VAB), 2021 WL 765243, at *20 (D. Conn. Feb. 26, 2021) (quoting *Norton v. Michonski*, 368 F. Supp. 2d 175, 179 (D. Conn. 2005)).

affirmatively establish an action's untimeliness, but it may not be granted simply because a complaint failed to include allegations affirmatively establishing its timeliness." *Id.* (quoting *Slainte Investments Ltd. P'ship v. Jeffrey*, 142 F. Supp. 3d 239, 253–54 (D. Conn. 2015)).

The Defendant argues that the Commissioner's cause of action accrued in 2012 when the Plaintiff knew or had reason to know of its injury, citing to, *inter alia*, *Blue Cross of California v. SmithKline Beecham Clinical Lab'ys, Inc.*, 108 F. Supp. 2d 116, 122 (D. Conn. 2000). According to the Defendant, USA Risk knew as early as 2012 that the Defendant was denying coverage for the Underlying Litigation under Insuring Agreement A, and thus the Commissioner's suit, which was not filed until September 3, 2020, is time-barred. This argument fails in the context of a motion to dismiss pursuant to Rule 12(b)(6) because the Defendant's citation to the Complaint notwithstanding, the Complaint does not allege or establish that Allied World Surplus denied coverage in 2012. To the contrary, the Complaint alleges that "sometime in or after July 2015, Defendant Allied World Surplus Lines improperly withdrew from defending USA Risk against CSRRG's claims in the Underlying Litigation." (Compl. ¶ 37.) Six years from July 2015 is July 2021, which would render this complaint, on its face, timely filed.[8]

---

[8] Although not cited by the parties, the Court observes that Exhibit C to the Complaint is a copy of the Settlement Agreement between CSRRG and USA Risk, which states that Darwin "notified USA Risk of its position that there is no coverage under Coverage I.A. of the Policy by letters dated September 5, 2014 from David Robles to Andy Sargeant; and July 23, 2015, from Richard A. Simpson to Lorelie S. Masters," which are also attached to the Settlement Agreement. (Settlement Agreement at 17–18 ¶ 21(b), ECF No. 39.) Six years from September 5, 2014 is September 5, 2020. As indicated, the Complaint in this matter was filed September 3, 2020. Although the July 23, 2015 letter referenced in the Settlement Agreement states that "[b]y no later than July 2012, Allied World communicated to USA Risk its position that the Underlying Litigation constitutes a **Governmental Claim** under the Policy, which is subject to a $25,000 sublimit of liability under Insuring Agreement B," there is no reference in the Complaint to any July 2012 communication, whatever form it is alleged to have taken; nor is any such communication included in the exhibits. (Settlement Agreement Ex. E, ECF No. 39 at 51 (footnotes omitted).) These are merely competing allegations at this juncture and resolution of the dispute would require a factual inquiry beyond the face of the Complaint.

The Plaintiff advances several alternative arguments in response to the Defendant's claim that the case is barred by the statute of limitations.[9] The Court need not resolve these issues because it is apparent that there are no facts that can be ascertained from the face of the Complaint that definitively render the lawsuit untimely. Indeed, each of the issues raised by the parties is inextricably bound up with questions of fact. The motion to dismiss is accordingly denied on this basis.

**Conclusion**

For the foregoing reasons, the Defendant's motion to dismiss is denied. The parties are instructed to meet and confer and to file an amended Joint Rule 26(f) Report that sets forth their proposed case management plan on or before **July 21, 2021.**

**SO ORDERED** at Bridgeport, Connecticut, this 21st day of June 2021.

*/s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE

---

[9] Plaintiff also asserts the applicability of the continuing course of conduct doctrine to the breach of the duty to defend claim, *see City of W. Haven v. Com. Union Ins. Co.*, 894 F.2d 540, 545 (2d Cir. 1990), and asserts, with respect to the breach of the duty to indemnify claim, that the claim did not accrue until the consent judgment was entered in 2018.